E.G. and M.G., on behalf
of A.G., Plaintiffs,

v.

**CITY SCHOOL DISTRICT OF NEW
ROCHELLE, Defendant.**

No. 07 CIV. 2696–WGY.

United States District Court,
S.D. New York.

March 16, 2009.

Gary S. Mayerson, Mayerson and Associates, New York, NY, for Plaintiffs.

Andrea Green, Kehl, Katzive & Simon, LLP, New York, NY, for Defendant.

### Memorandum and Order

WILLIAM G. YOUNG, District Judge.[1]

■ The plaintiffs, E.G. and M.G. (the "Parents"), seek reimbursement on behalf of their son, A.G., for educational expenses from the City School District of New Rochelle (the "District") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 et seq. The parties have agreed to treat the matter as a "case stated" under Rule 56 of the Federal Rules of Civil Procedure.[2]

## I. FINDINGS OF FACT

A.G. is a young boy with autism. During the 2004–2005 school year, A.G. attended a part-time private early childhood mainstream program with a 1:1 aide and received at-home applied behavior analysis therapy ("behavior therapy"), speech therapy, and occupational therapy. This program was funded by the District pursuant to a stipulation between the parties which arose out of a prior impartial hearing held pursuant to 20 U.S.C. § 1415(f). Green Aff. I, Ex. 9 at 6–7 [Doc. No. 16]. For the

---

1. Of the District of Massachusetts, sitting by designation.

2. Derived from the procedures of the courts of the Commonwealth of Massachusetts, *see, e.g., Parker v. Morrell*, 59 Mass.App.Dec. 34 (Mass.Dist.Ct.1976), the "case stated" procedure is firmly established in the jurisprudence of the First Circuit. *See, e.g., Boston Five Cents Sav. Bank v. Secretary of Dep't of Hous. & Urban Dev.*, 768 F.2d 5, 11–12 (1st Cir. 1985); *Continental Grain Co. v. Puerto Rico Maritime Shipping Auth.*, 972 F.2d 426, 429 n. 7 (1st Cir.1992); *Bunch v. W.R. Grace & Co.*, 532 F.Supp.2d 283 (D.Mass.2008). It is a most helpful procedural device. In this session of the Court, it works like this: whenever cross motions for summary judgment reveal that the relevant facts appear without significant dispute, the courtroom deputy clerk offers the parties to treat the case as a case stated. Should they accept, as was the case here, the Court treats the undisputed facts as the established record and draws the reasonable inferences therefrom without the necessity of drawing adverse inferences against each moving party, *see* Fed.R.Civ.P. 56. The facts of the case being established, the Court affords each party thirty minutes for final argument (not the usual ten minutes per party when hearing argument on a motion). In due course, the Court enters findings and rulings as required by Fed.R.Civ.P. 52(a).

2005–2006 school year. Parents rejected the District's proposed individualized education program ("education program"). *See* 20 U.S.C. § 1414(d). Instead they enrolled A.G. in a program similar to the one he attended during the prior academic year and initiated this action for reimbursement. Green Aff. I, Ex. 9 at 6–7.

Under New York law, each school district must have a Committee on Preschool Special Education ("Preschool Committee") and a Committee on Special Education ("Special Education Committee"). These committees are responsible for developing the individualized education programs for preschool and school age children, respectively. *See* N.Y. Educ. Law §§ 4402, 4410 (2009). On January 31, 2005, M.G., A.G.'s mother, attended a meeting for parents of children moving within the auspices of the Special Education Committee from the Preschool Committee. At the meeting, the District's Preschool Committee chairperson handed out copies of a PowerPoint presentation. The presentation included the following: "All school-age special education services are provided at school." Green Aff. I, Ex. 31 at 3. This made M.G. concerned about the continued availability of at-home behavior therapy for A.G. Green Aff. I, Ex. 9 at 33.

Starting in early 2005, Yvette Goorevitch, the District's Director of Special and Alternative Education, began observing and evaluating A.G. so that she could begin to develop a program for him. *Id.* at 8. In February 2005, Goorevitch and the District's speech pathologist met with Parents to discuss the necessary evaluations and the spectrum of placements available. Id. At this meeting, Goorevitch mentioned that the special education class of Bobbie Powers would be a "good fit" for A.G. Id. at 33. After the meeting, M.G. visited Powers' class as well as two other possible placements. Green Aff. II, Ex. A (Tr. 1897:6–23) [Doc No. 20].

A.G.'s Special Education Committee team held a meeting on May 10, 2005, to discuss the various evaluations, appropriate educational goals, and possible educational programs for the following year. Green Aff. I, Ex. 9 at 11. The written program document containing the goals and the details of the education program was created after the meeting. *Id.* at 11. Several of the District's participants in the meeting stated that A.G. needed less reliance on his 1:1 aide. *Id.* at 10, 17, 22. There was also discussion about his need to learn social and language skills in a structured environment. Green Aff. I, Ex. 3, Pt. 3 (Tr. 480:13–18).

The District ultimately offered a program containing: five mornings of mainstream class with a 1:1 aide, five afternoons of Powers' special education class, ten hours of at-home behavior therapy, and various related services. Green Aff. I ¶ 6. Parents rejected this offer and instead enrolled A.G. in a program of two full days and three half days of mainstream class with a 1:1 aide, along with at-home behavior therapy in the range of eleven to twenty hours per week. Green Aff. I, Ex. 9 at 31–32.

Pursuant to 20 U.S.C. § 1415(e), there was a dispute resolution meeting on August 31, 2005. Green Aff. I, Ex. 9 at 14. At this meeting, the District agreed: to incorporate education program goals from A.G.'s private service provider; to provide transition services to facilitate a smooth transition from the private program to the District's proposed program; and to provide individual speech therapy rather than therapy in a dyad. *Id.*

## II. RULINGS OF LAW

 Under the IDEA, "[a]lthough school officials' decisions are subject to

independent judicial review, the responsibility for determining whether a challenged [individualized education program] will provide a child with an appropriate public education rests in the first instance with administrative hearing and review officers." *P., ex rel. Mr. and Mrs. P. v. Newington Bd. of Educ.*, 546 F.3d 111, 118 (2d Cir.2008) (internal quotation marks omitted). Thus, "[w]hile federal courts do not simply rubber stamp administrative decisions, they are expected to give 'due weight' to these proceedings, mindful that the judiciary generally 'lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir.1998) (internal citations omitted). "Deference is particularly appropriate when ... the state hearing officers' review has been thorough and careful." *Id.* Thus, the Court's review "is tinged with a significant degree of deference to the state educational agency, as we are essentially acting in an administrative-law-style capacity." *Newington*, 546 F.3d at 118; *see also Lillbask v. Connecticut Dep't of Educ.*, 397 F.3d 77, 83 n. 3 (2d Cir.2005) (noting that "a motion for summary judgment in an IDEA case often triggers more than an inquiry into possible disputed issues of fact. Rather, the motion serves as a pragmatic procedural mechanism for reviewing a state's compliance with the ... IDEA.") (internal quotation marks omitted).

■ The IDEA mandates that states receiving certain federal funds provide a free appropriate public education to children with disabilities. *See* 20 U.S.C. § 1401(9). To meet the statutory standard such an education must be administered in accordance with an individualized education program. *Id.* The statute also mandates that children with disabilities must be educated in the least restrictive environment. 20 U.S.C. § 1412(a)(5). If a state fails to provide a free appropriate public education, a child's parents may send him to a private program and seek retroactive tuition reimbursement from the state. *Cerra v. Pawling Central Sch. Dist.*, 427 F.3d 186, 192 (2d Cir.2005). Parents challenging an individualized education program are entitled to such reimbursement if the Court determines that the proposed program was procedurally or substantively inadequate and the private schooling obtained by the parents is appropriate for the child's needs. *Id.*

■ An individualized education program procedurally is sound if the state gives the parents an adequate opportunity to participate in the development of the program. *Id.*; 20 U.S.C. § 1415(b)(1). By contrast, if the program is predetermined by the state, it is procedurally defective. *Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 857–58 (6th Cir.2004) (finding an IDEA violation where a school district had an unofficial policy of not offering a certain therapy).

■ In this case, Parents argue that the education program was defective on both counts. That is, E.G. and M.G. did not have an adequate opportunity to participate *and* the District had predetermined A.G.'s class assignment and the location of his behavior therapy.

Neither argument is persuasive. The individualized education program requires a statement of measurable annual goals. 20 U.S.C. § 1414(d). Parents claim that because these goals were discussed during the meetings, but not finalized in written form, Parents were deprived of an opportunity to participate in the development of the education program. Pls.' Mem. Supp. 4, 11–12 [Doc No. 13]; *See* Green Aff. I, Ex. 3, Pt. 1 (Tr. 72:15–74:17). There is no legal authority to support this proposition. The IDEA does not require parental presence during the actual drafting of the writ-

ten education program document. Further, Parents had an adequate opportunity to respond to the goals in the written education program after it was drafted. Green Aff. II, Ex. C [Doc. No. 20]; Green Aff. I, Ex. 7.

Parents' claim regarding predetermination also fails. Parents allege two forms of predetermination: (1) the assignment of A.G. to Powers' special education class, and (2) the provision of behavior therapy at A.G.'s home. Pls.' Mem. Supp. 3–4. The mere fact that there were discussions about enrolling A.G. in Powers' class prior to the Special Education Committee meeting does not establish predetermination. The record shows that several classroom options were considered prior to the meeting, Green Aff. II, Ex. A (Tr. 1897:6–23), and that a final recommendation was not made until after the meeting. Green Aff. I, Ex. 3, Pt. 3 (Tr. 480:19–21).

■ Parents argue that the District had a policy of not offering behavior therapy in the home. Pls.' Mem. Supp. 3–4. In support of their claim, Parents note the language in the January 31, 2005 PowerPoint presentation, which stated, "[a]ll school-age special education services are provided at school." Green Aff. I, Ex. 31 at 3. If the District indeed refused to consider at-home behavior therapy pursuant to such a policy, it would have violated the IDEA. *Deal,* 392 F.3d at 857–58. Here, however, the District offered ten hours of at-home behavior therapy at the meeting. Green Aff. I, Ex. 9 at 11–12. Parents argue that this offer is not dispositive. "[D]efendant-appellee crafted a special 'A.G. exception' to its rule so that it could claim there was no rule." Pls.' Mem. Supp. 12 n. 9. This Court declines Parents' invitation to step through the looking-glass. Even assuming, arguendo, the presentation was evidence of predetermination, *cf.* Green Aff. I, Ex. 3, Pts. 3–4 (Tr. 1093:23–1094:6), A.G.'s education program could not have been predetermined in this regard or he never would have received the offer of ten hours of at-home behavior therapy.

■ Parents argue that the education program was substantively deficient as well. An individualized education program must be "reasonably calculated to enable the child to receive educational benefits." *Cerra,* 427 F.3d at 192. Parents argue that the District's recommendation of ten hours per week of at-home behavior therapy does not meet this standard. Pls.' Mem. Supp. 4. There is, however, ample evidence to the contrary. Notably, Parents' own expert witness testified that if A.G. is in school for twenty-five hours per week, eight or ten hours of at-home behavior therapy is sufficient. Green Aff. I, Ex. 9 at 41. Nevertheless, Parents point to the absence of a written recommendation prior to the meeting indicating that ten hours was the appropriate amount of behavior therapy. Pls.' Reply Mem. 6 [Doc. No. 19]. Again, the IDEA does not require such formality. In any event, Parents' bills show that A.G.'s total behavior therapy hours were in the range of ninety hours per month. Mayerson Aff. Ex. J [Doc. No. 14]. The proposed education program, including at-home and 1:1 shadow time, was in the same range. Def.'s Mem. Supp. 3. The precise allocation of several hours of behavior therapy between the school and home environments does not alter this Court's conclusion that the education program, taken as a whole, was "reasonably calculated."

■ Parents claim that the education program's failure to provide A.G. with individual speech therapy renders it substantively inadequate. Pls.' Mem. Supp. 7. Here too, there is no authority to support their claim. *See* N.Y. Comp.Codes R. & Regs. tit. 8, § 200.13(a)(4) ("Instructional services shall be provided ... in groups not to exceed two ..."). Moreover, this

particular claim is moot because the District offered Parents individual speech therapy during the mediation process. Green Aff. I, Ex. 7.

■■■■ Lack of compliance with the IDEA'S "least restrictive environment" mandate is considered a substantive flaw in an individualized education program. *P., ex rel. Mr. and Mrs. P. v. Newington Bd. of Educ.*, 546 F.3d 111, 119 (2d Cir. 2008). This Circuit has adopted a two-pronged approach to determine whether a school district has offered to educate the child in the least restrictive environment. "[A] court should consider, first, 'whether education in the regular classroom, with the use of supplemental aids and services, can be achieved satisfactorily for a given child,' and, if not, then 'whether the school has mainstreamed the child to the maximum extent appropriate.' " *Id.* at 120 (internal citations omitted).

■■■■ In this instance, the Parents concede that A.G. cannot be in a regular classroom full-time.[3] Thus, the question is whether A.G. has been mainstreamed to the maximum extent appropriate. Parents' program included two full days and three half days of regular classroom time

with a 1:1 aide. The District's proposal included only five half days of regular classroom time. In other words, the Court must decide whether A.G.'s placement outside of a regular classroom for two afternoons per week was appropriate under the circumstances.[4]

Given the educational needs of A.G. as established by the testimony of Powers, Green Aff. I, Ex. 3, Pt. 3 (Tr. 480:13–18) (indicating that A.G. needed a highly structured environment to develop social and language skills), and Deborah Whitman, the District's behavioral consultant, *id.* (Tr. 816:21–817:7) (same), the Court finds that the District has complied with the least restrictive environment mandate. "While including students in the regular classroom as much as is practicable is undoubtedly a central goal of the IDEA, schools must attempt to achieve that goal in light of the equally important objective of providing an education appropriately tailored to each student's particular needs." *Newington*, 546 F.3d at 122. Powers and Whitman provided convincing educational rationales for A.G.'s placement in Powers' class during the afternoons. Such explanations are not easily ignored,

---

**3.** Parents stress the fact that the District does not offer a full day (morning and afternoon) of mainstream kindergarten for any students, disabled or otherwise. Hr'g Tr. 12:24–13:3 (January 20, 2009). At the same time, they concede that were such a program in existence, they would only place A.G. there for two full days and three half days, using the other afternoons for 1:1 behavior therapy. The District notes that to comply with Parents' request it would have to place A.G. in two different mainstream programs, one for the morning and one for the afternoon. Hr'g Tr. 9:22–10:6. The precise structure of the District's mainstream program, however, does not change the analysis of the least restrictive environment test's first prong. Either A.G. is in the equivalent of a full time mainstream program through his placement in a half-day kindergarten (apparently the only type of kindergarten the District offers), or else A.G. has

conceded that he does not want a full time, full day program for more than two days per week.

**4.** The analysis of this second prong is what distinguishes this case from *L.B. and J.B., on behalf of K.B. v. Nebo School District*, 379 F.3d 966 (10th Cir.2004) relied on by Parents. Hr'g Tr. 17:4–16. In *L.B.*, the school district placed a disabled child in a full time alternative program. The child did not receive any mainstream classroom time. Accordingly, the Tenth Circuit ruled that the school district failed prong one of the least restrictive environment test. *L.B.*, 379 F.3d at 978. Here, the education program recommended a mainstream environment for fifty percent of A.G.'s classroom hours, and Parents concede he cannot be in a mainstream environment full time, satisfying the first prong of the test.

especially where the Court's review is "tinged with a significant degree of deference to the state educational agency." *Id.* at 118. In light of this testimony, it cannot be said that the education program is overly restrictive. Rather, it adequately balances the maximizing mandate of the IDEA with its individually-tailored mandate. Statutory terms like "appropriate" do not admit of mathematical precision.

The District presses the argument, adopted by the hearing and review officers, that because the District's program contains more overall hours per week of peer interaction, when taking both the mainstream and special education classes into account, it is less restrictive than Parents' proposal. Def.'s Mem. Opp. 14. The Court rules this theory unavailing. Although the District is correct that 1:1 at-home behavior therapy is more restrictive than Powers' special education class, there is no formula for comparing the additional mainstream hours of Parents' proposal with the fewer mainstream hours, but more peer hours overall, of the District's proposal. Such statutory divination is best left for haruspices.

Finally, Parents contend that the provision of related services, e.g., occupational therapy, during the school day further deprived A.G. of mainstream classroom time to the maximum extent appropriate. Pls.' Mem. Supp. 6. The record does not support this claim. Green Aff. II, Ex. A (Tr. 95:6–13) (indicating that A.G. will receive his related services during the lunch break between his classes).

## III. CONCLUSION

Because Parents have not shown that A.G. was denied a free appropriate public education in the least restrictive environment, their reimbursement claim fails. Accordingly, the Court will not address the remaining prongs of the reimbursement test addressing the progress A.G. made in his private placement. *See Frank G. v. Board of Educ. of Hyde Park,* 459 F.3d 356, 365 (2d Cir.2006). Thus, judgment will enter for the District.

SO ORDERED.