**ADRIANNE and Joshua D., parents of J.D., Plaintiffs,**

v.

**LAKELAND CENTRAL SCHOOL DISTRICT, State of Education Department, Commissioner Richard Mills, in his individual and official capacity, Defendants.**

No. 08 CIV 8101–WGY.

United States District Court, S.D. New York.

Feb. 22, 2010.

Rosalee Charpentier, Family Advocates, Inc., Kingston, NY, for Plaintiffs.

Mark Craig Rushfield, Shaw, Perelson, May & Lambert, LLP, Poughkeepsie, NY, Charles Ethan Enloe, New York State Office Of The Attorney General, Darpana Mukund Sheth, Michael Robert Klekman,

State of New York Office of the Attorney General, New York, NY, for Defendants.

## Memorandum and Order

WILLIAM G. YOUNG, District Judge.[1]

## I. INTRODUCTION

In this case, the plaintiffs Adrianne and Joshua D., parents of J.D. ("Plaintiffs"), claim that the Lakeland Central School District ("District") and the State Educational Department ("State") failed to provide their son J.D. with free appropriate public education ("FAPE"), and that the placement of J.D. for his 8th grade in the Kildonan School ("Kildonan"), a private school for disabled children, in academic year 2007–2008 was appropriate. The Plaintiffs thus request reimbursement of tuition, under the Individuals with Disability Education Act ("IDEA"), 20 U.S.C. § 1400, et seq., for J.D.'s 8th grade, and expenses in connection with J.D.'s stay on campus during weekdays. Moreover, they claim that the State and Commissioner Richard Mills ("Commissioner") (collectively "State Defendants") are liable for a procedural violation of the IDEA by failing to ensure access to impartial review of complaints under the IDEA on the State Review level. The Plaintiffs also bring a claim under 42 U.S.C. § 1983 against the Commissioner who allegedly violated the due process clause of the 14th Amendment by hiring a person biased against disabled children as a state review officer.

### A. Procedural Posture

The Plaintiffs filed their Amended Complaint ("Am. Compl.") on January 23, 2009. [Doc. No. 11]. On March 23, 2009, the State Defendants moved to dismiss the action [Doc. No. 14], and filed their Memorandum of Law in Support thereof. [Doc. No. 16].

On May 8, 2009, the District moved for summary judgment [Doc. No. 18], and submitted a Memorandum of Law in Support. [Doc. No. 20]. On May 11, 2009, the Plaintiffs cross-moved for summary judgment and submitted a Memorandum of Law. [Doc. No. 22, 26]. The parties have agreed to treat the matter as a "case stated" under Federal Rule of Civil Procedure 56. *See E.G. v. City Sch. Dist. of New Rochelle*, 606 F.Supp.2d 384, 386 n. 2 (S.D.N.Y.2009).[2]

### B. Federal Jurisdiction

This case involves a question of federal law. Federal jurisdiction is thus available pursuant to 28 U.S.C. § 1331.

---

1. Of the District of Massachusetts, sitting by designation.

2. Derived from the procedures of the courts of the Commonwealth of Massachusetts, *see, e.g., Parker v. Morrell*, 59 Mass.App. Dec. 34 (Mass.Dist.Ct.1976), the "case stated" procedure is firmly established in the jurisprudence of the First Circuit. *See, e.g., Situation Mgmt. Sys., Inc. v. ASP Consulting LLC*, 560 F.3d 53, 58 (1st Cir.2009); *Continental Grain Co. v. Puerto Rico Maritime Shipping Auth.*, 972 F.2d 426, 429 n. 7 (1st Cir.1992); *Boston Five Cents Sav. Bank v. Sec'y of Dep't of Hous. and Urban Dev.*, 768 F.2d 5, 11–12 (1st Cir.1985); *Bunch v. W.R. Grace & Co.*, 532 F.Supp.2d 283, 286–87 (D.Mass.2008). It is a most helpful procedural device. In this session of the Court, it works like this: whenever cross motions for summary judgment reveal that the relevant facts appear without significant dispute, the courtroom deputy clerk offers the parties to treat the case as a case stated. Should they accept, as was the case here, the Court treats the undisputed facts as the established record and draws the reasonable inferences therefrom without the necessity of drawing adverse inferences against each moving party, *see* Fed.R.Civ.P. 56. The facts of the case being established, the Court affords each party thirty minutes for final argument (not the usual ten minutes per party when hearing argument *on* a motion). In due course, the Court enters findings and rulings as required by Fed.R.Civ.P. 52(a).

## II. Findings of Fact

### A. J.D.'s Early Education

J.D. was born on December 8, 1993. He attended the Lakeland public schools for kindergarten. J.D. exhibited difficulty with reading and writing. In his 1st grade year (2000–2001), he started a reading recovery program in the resource room. In the middle of his 2nd grade year (2001–2002), he was classified as Learning Disabled, and continued the reading recovery program in the resource room on a daily basis. In the middle of his 3rd grade year (2002–2003), he was diagnosed with ADHD and received medical treatment. In his 4th grade year (2003–2004), he was directed to the Wilson reading program ("Wilson program") in a small setting in the resource room.

The District created an Individualized Education Program ("IEP") for J.D.'s 5th grade year (2004–2005) ("IEP–5th grade"). Parents' Exhibit 3 ("Parents' Ex.").[3] Under that IEP, J.D. continued in the Wilson, program four times a week, for forty-five minutes in class with a ratio of 5:1. *Id.* at 1. In February 2005, J.D. underwent an Educational Evaluation that noted that his progress in the Wilson program during his 4th grade year "continued at a very slow pace." Joint Exhibit 26 at 1 ("Joint Ex."). The evaluation noted as well that J.D. improved in math and listening comprehension, while his written expression test came out poorly. *Id.* at 2–3. J.D.'s Psychoeducational Assessment was conducted in February 2005. Joint Ex. 27. It showed that he performed below expectations in skills development, that his visual-motor integration and auditory perception was lower when compared to his results in 2nd grade, but that his visual perception was higher. *Id.* at 4–5. The assessment noted that no significant emotional factors affected his schooling, but his social adaptive skills were at risk. *Id.*

The Progress Report for the IEP–5th grade goals noted that all goals were completed or progressing satisfactorily. Joint Ex. 19. By the end of J.D.'s 5th grade year, he underwent a Neuropsychological Evaluation, which showed that his reading and writing skills were at the level of 2nd and 3rd grade, respectively, and that his math was at the level of 8th grade, but—when under time pressure—at the 2nd grade level. Joint Ex. 22 at 9. The evaluation recommended an intensive program in reading and writing, in small classrooms with other children, and support for J.D.'s social-emotional needs. *Id.* at 13.

### B. J.D.'s 6th Grade Year

For his 6th grade year (2005–2006), another IEP was created ("IEP–6th grade") Joint Ex. 20.[4] Under its terms J.D. participated in the OASIS program, a program created for children with emotional problems, and attended a special reading class for forty-four minutes, twice in each six-day cycle, with a 5:1 ratio. *Id.* at 1. He also received counseling twice a week, for thirty minutes, in a 5:1 setting. *Id.* In October 2005, a report, prepared by a psychiatrist, diagnosed J.D. with Pervasive Development Disorder–Not Otherwise Specified (PDD–NOS). Joint Ex. 18 at 6. The report suggested considering occupational therapy, reassessment of J.D.'s language and speech process, and reassess-

---

**3.** Parents' Exhibits and Joint Exhibits referred to in this opinion are part of the Record before the State Review Officer in the Office of State Review, Appeal No. 08–029, that were forwarded to this Court by the State.

**4.** In the middle of J.D.'s 6th grade year, the District performed a special review of the IEP–6th grade. No changes were made. Joint Ex. 15.

ment of reading skills that were hard to remediate under the Wilson program. *Id.* at 7. It mentioned that the Orton–Gillingham program might be more suited to him, and that the OASIS program was appropriate. *Id.*

In November 2005, Occupational Therapy Screening was performed. Joint Ex. 17. Visual-motor, visual-spatial, and fine motor skills were found within average range and no occupational therapy was recommended. *Id.* at 4. In December 2005, a Clinical Evaluation of Language Fundamentals (CELF–4) was conducted, and J.D.'s articulation and fluency was found within normal limits. Joint Ex. 16 at 9. No speech or language services were recommended. *Id.*

At the end of 6th grade, a Progress Report for IEP Goals was prepared for J.D. and it showed that he had difficulty with one out of ten Reading Annual Goals and great difficulty with two out of seven Writing Annual Goals. Joint Ex. 11. at 1–3. J.D. otherwise was either progressing satisfactorily or had achieved goals. *Id.* He achieved all goals in Social Emotional Behavior. *Id.* at 1–4. J.D.'s 6th-Grade Report noted a passing score for his reading class taught by Teacher Apostolico, with a comment "works hard but finds subject difficult." Joint Ex. 12. Reading taught by Teacher Straub, is graded "S"[5] with the comment "good effort." *Id.* Moreover, in J.D.'s Progress Report, English class Teacher Apostolico stated that J.D. had difficulty expressing thoughts in writing. Joint Ex. 13.

### C. J.D.'s 7th Grade Year

The IEP for J.D.'s 7th grade year, 2006–2007 ("IEP–7th grade"), offered continuation in the OASIS and Wilson programs.

Joint Ex. 14. Pursuant to the IEP–7th grade, J.D. was supposed to use resource room reading in a 5:1 setting once a week for three hours. *Id.* at 1. It offered extended reading during the summer in an 8:1:1 setting three times a week for ninety minutes. *Id.* He also received weekly counseling for thirty minutes in a small setting. *Id.*

The Plaintiffs, were dissatisfied with the program offered by the District and they removed J.D. to Kildonan for 7th grade. District's Local Rule 56.1 Statement of Material Facts ("Dist.'s 56.1") ¶ 22, [Doc. No. 19], Plaintiffs' Answer to Defendant's 56.1 Statement ("Pls' 56.1 Answer") ¶ 22, [Doc. No. 25]. Tests conducted at the beginning and at the end of the academic year showed that J.D. had improved his reading and writing skills. Joint Ex. 5. The Plaintiffs' claims for tuition for J.D.'s 7th grade were settled. Am. Compl. ¶ 29; Plaintiffs' Rule 56.1 Statement ("Pls' 56.1 Statement") ¶ 32.

### D. J.D.'s 8th Grade Year

The District proposed an IEP for J.D.'s 8th grade year, 2007–2008, ("IEP–8th grade"). Joint Ex. 6. The IEP–8th grade called for continuation in the OASIS and Wilson programs. *Id.* at 2. The reading program was intensified to five times a week for thirty-nine minutes in a 5:1 setting. *Id.* The IEP–8th grade proposed weekly counseling for thirty minutes in a small setting. Joint Ex. 6 at 2. Again, the Plaintiffs rejected the IEP–8th grade, and placed J.D. in Kildonan for 8th grade. Dist.'s 56.1 ¶ 44, [Doc. No. 19].

The Plaintiffs' claim for tuition expenses as to J.D.'s 8th-grade education at Kildonan was submitted to an Impartial Hear-

---

**5.** Not explained in the transcript. Having grown up in New York, I assume "S" means "satisfactory."

ing Officer ("IHO") who, on February 26, 2008, ruled in the Plaintiffs' favor issuing a "Decision on Merits" in Case No. 27125 ("IHO Decision"). The IHO found that the "[s]tudent did not progress in his prior [Wilson] program and he required more intense instruction for language decoding and fluency acquisition than was being offered [in the IEP–8th grade]." IHO Decision at 30. The IHO explained that while the particular methodology for reading instruction was appropriate, in order to receive an educational benefit it was necessary for J.D. to obtain daily one-on-one reading instruction for thirty-nine minutes, and not instruction in a group of up to five. *Id.* The IHO then analyzed and found J.D.'s placement in Kildonan school appropriate. *Id.* at 33.

On appeal, the State Review Officer, Paul F. Kelly ("SRO") reversed the IHO Decision [Doc. No. 19. Ex. A] ("SRO Decision"). The SRO concluded that the IEP–8th grade provided J.D. with a FAPE, that the Plaintiffs' placement of their child in Kildonan was not appropriate,[6] and that tuition need not be reimbursed. SRO Decision at 14, 17.

## III. Rulings of Law

### A. Legal Standard

■ Any state that receives federal funding pursuant to the IDEA must provide all children with "free appropriate public education." 20 U.S.C. § 1412(a)(1)(A). When the state fails to do so, parents may remove their child to an appropriate private school and seek tuition reimbursement from the state. *M.S. ex rel. S.S. v. Bd. of Educ. of Yonkers*, 231 F.3d 96, 102 (2d Cir.2000) *abrogated on*

other grounds by *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 126 S.Ct. 528, 163 L.Ed.2d 387 (2005). A federal court's review of a challenged IEP focuses on two issues: (1) the state's compliance with the IDEA'S procedures, and (2) the substance of the IEP, i.e. whether the IEP was "reasonably calculated to enable the child to receive educational benefits." *Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206–07, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).

The IDEA does not specify what level of educational benefit is required. The education provided need not maximize the potential of handicapped children. *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 132 (2d Cir.1998); *Rowley*, 458 U.S. at 200, 102 S.Ct. 3034 (stating that an IEP required by the IDEA represents solely a "basic floor of opportunity"). An "IEP must be reasonably calculated to provide some 'meaningful' benefit." *Mrs. B. v. Milford Bd. of Educ.*, 103 F.3d 1114, 1120 (2d Cir.1997). "[A] school district fulfills its substantive obligations under the IDEA if it provides an IEP that is likely to produce progress, not regression, and if the IEP affords the student with an opportunity greater than mere trivial advancement." *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 195 (2d Cir.2005) (quoting *Walczak*, 142 F.3d at 130) (inner quotation marks omitted). A grading and advancement system is an important consideration in determining what is a meaningful educational benefit. *Mrs. B.*, 103 F.3d at 1120 (citing *Rowley*, 458 U.S. at 203, 102 S.Ct. 3034).

■ The IEP must provide for the "least restrictive environment," otherwise

---

**6.** The SRO noted that Kildonan's residential program did not meet the student's social and emotional needs, that it was inappropriately restrictive because it did not secure any interaction with, or exposure to behavior of non-

disabled children, and J.D. had to stay on-campus during weekdays due to the Parents' inability to drive him to school every day. SRO Decision at 17.

it is flawed. *P., ex rel. Mr. and Mrs. P. v. Newington Bd. of Educ.*, 546 F.3d 111, 119 (2d Cir.2008). This involves two inquiries: "whether education in the regular classroom, with the use of supplemental aids and services, can be achieved satisfactorily for a given child, and, if not, then whether the school has mainstreamed the child to the maximum extent appropriate." *Id.* at 120 (quoting *Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1048 (5th Cir.1989)) (quotation marks omitted).

▇ Only if the IEP is procedurally or substantively deficient, can the federal court examine the issue of the appropriateness of private placement. *Cerra*, 427 F.3d at 192. The level of restrictiveness may be considered in determining whether tuition reimbursement should be ordered. *M.S.*, 231 F.3d at 105.

▇ In a review pursuant to the IDEA, the district court must base its decision on the preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C)(iii). The court "must give due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *A.C. ex rel. M.C. v. Bd. of Educ. of Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 171 (2d Cir.2009) (quoting *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 113 (2d Cir.2007)) (inner quotation marks omitted). Deference is especially warranted when the district court makes its decision based solely on the administrative record. *Id.* A court should defer to the SRO's final decision, even in a case of conflict between the IHO's and SRO's decisions. *Id.*

## B. Application of the Legal Standard to the Instant Case

The question before this Court is whether the IEP at issue here was more likely than not to provide J.D. with a meaningful educational benefit, and therefore whether the SRO's decision denying tuition reimbursement ought stand.

▇ The Plaintiffs argue that the IEP–8th grade did not provide J.D. with a meaningful educational benefit because, during his previous years in the Wilson program, J.D. allegedly did not make any progress. They assert that because the IEP–8th grade was substantially the same [7] as previous programs (i.e., it directed J.D. to participate in group classes in the Wilson program and not individual classes in the Orton–Gillingham program), J.D. was not likely to progress had he continued education in the Wilson program during his 8th grade. They claim that an education at Kildonan school brought much better results.

Other than their own testimony, the Plaintiffs do not present evidence supporting their contention that J.D. made no progress in the Wilson program. To the contrary, the documents available [8] show that progress and not regress occurred. The Progress Report for the IEP goals for J.D.'s 6th grade year states that J.D.

7. The IEPs for J.D.'s 6th-grade and 8th-grade educations are similar in terms of setting (5:1) and time length (thirty-nine and forty-four minutes). They are, however, not identical. (Reading classes in the IEP–6th grade met twice in a six-day period, while such classes under the IEP–8th grade were to be held every day).

8. No tests exist that directly compare J.D.'s performances at the beginning and end of the Wilson program. This circumstance does not help the Plaintiffs, however, because the burden of proof to show lack of progress is on the Plaintiffs. *See Schaffer*, 546 U.S. at 62, 126 S.Ct. 528 (stating burden of proof in an IDEA administrative hearing challenging an IEP rests on the party seeking relief).

"achieved" goals, "progress[ed] satisfactorily," or made "some progress" in the area of reading. Joint Ex. 11 at 1–2. He demonstrated difficulty with only one out of ten goals in his reading skills. *Id.* at 1. Other than spelling, with which he had great difficulty, J.D. achieved all goals set up in the IEP–6th grade for his writing skills. *Id.* at 2–3. Furthermore, he received passing grades and was advanced to the next grade. Joint Ex. 12. Therefore, the IEP–6th grade provided J.D. with a meaningful educational benefit.

Because under the IEP–6th grade, J.D. made some progress, the SRO appropriately concluded that J.D. would have continued to progress under a more intense IEP 8th grade that offered reading class every day. The IEP–8th grade was "reasonably calculated to enable the child to receive educational benefits," *Walczak,* 142 F.3d at 129, and it did not amount to denial of a FAPE.

While it may be true that J.D. achieved greater progress under the Orton–Gillingham program, that is irrelevant here. The IDEA does not require an IEP to provide more than a "basic floor of opportunity." The IEP at issue here does provide this floor. One can readily appreciate the feelings of loving parents who have themselves observed the benefits of education at Kildonan. Still, as Justice Ginsburg expressed it, speaking for the D.C. Circuit Court, "because public resources are not infinite, federal law does not secure the best education money can buy; it calls upon government, more modestly, to provide an appropriate education." *Lunceford v. Dist. of Columbia Bd. of Educ.,* 745 F.2d 1577, 1583 (D.C.Cir.1984).

 The Plaintiffs here fail to prove that the District did not offer an IEP that provided meaningful educational benefit to J.D. Therefore, under *Cerra* this Court need not conduct further analysis as to the appropriateness of private placement.[9] *See Cerra,* 427 F.3d at 192. Likewise, the Plaintiffs failed to appropriately state their other claims against State Defendants. Although the Plaintiffs state that over eighty-six percent of the SRO's decisions in 2006 and 2007 were unfavorable to disabled children, and that the SRO allegedly resides with the Commissioner's Chief Counsel, these statements are not sufficient to allege that the SRO is biased.

## IV. CONCLUSION

For the reasons stated above, this Court concludes that the District offered to provide J.D. with a FAPE. Thus, neither the District nor the State is liable for tuition reimbursement. With regard to the remaining claims, the State Defendants' motion to dismiss [Doc. No. 14] must be, and hereby is, GRANTED.

Accordingly, judgment shall enter for all the defendants.

SO ORDERED.

---

**9.** This Court notes that the SRO, having concluded that a FAPE was provided, analyzed further the nature of the placement of J.D. in Kildonan, and found it failed the appropriateness test.